Judge Underwood
delivered the opinion of the Court'.
The opinion originally delivered in Shis cause, and which has been improperly published in the third volume of J. J. Marshall’s Reports, 612, contains a statement of the facts of the case. Upon re-argument, we were referred to the case of Barns vs. Williams, II Bibb, 562, as being incompatible with the doctrines laid down in the original opinion. We confess that this case is an authority in point, and unless directly overturned, would be con-elusive to shew, that the jailor was authorized, by law, to take a bond for the prison rules, from a debt- or confined by a ca. -sa. issuing from the office of the federal court. We deem it unnecessary to consider the question whether, on principle, the case in Bibb can be supported. Its doctrines are fortified by the case of Randolph vs. Donaldson, IX Cranch., 76; III Condensed Reports, 280; and, therefore, if the laws of the state stood now as they were when Hopkins executed the.,bond to the jailor, Barns, and the bond in the present case had been taken in conformity to them, we would acquiesce and give validity to the bond, following the principle of the foregoing adjudications. But the laws are not the same. The prison bounds have been enlarged to the limits of the staté since that period, if not abolished altogetlu er¿ and unless Congress has prospectively adopted *652 the legislation of the state upon the subject, there was no law authorizing the jailor to give a prisoner, committed by the authority of the United States, the bounds of the state by taking such a Bond as that on which this suit has been instituted.
Congress cannot delegate its own legislative powers to the state legislature, or adopt, prospectively, such law» as a state may thereafter pass upon any jintticular subject.
.The power of members of'Congress is a personal trust, which cannot be delegated.
Act of 1S22, extending the prison bounds to the limits of the state, did not operate in favor of debtors confined under process from the courts of the TJ. States.
We do not concede that the legislature of the nation has prospectively adopted the legislation of the state. It has made no direct attempt to do so, and if it had, we deny the power. The legislative authority of congress cannot be delegated to the legislatures of the states. The power confided to members of congress is a personal trust, which cannot be transferred by them. When called on to account to their constituents for their conduct, it would be at war with our whole system to excuse them upon the ground that they liad delegated their powers to the legislature of a state. The people, according to our frame of government, confide in the wisdom of their representatives in congress to make laws national in their operation. They do not rely upon such substitutes as congress may appoint. We are, therefore, of opinion, that the act of the Kentucky legislature, passed in 1822,extending the prison bounds to the limits of the state, or, in effect, abolishing the prison bounds which congress had, by its legislation, adopted, could not operate in behalf of debtors confined under process from the courts of theU. States. At the time congress extended to prisoners, confined under federal authority, the prison yards of walks allowed by the laws of the states, they were regulated with a view to the health of prisoners. The act of 1822 was passed with the view to enable prison-* ers to pursue their ordinary avocations without restraint, and was so far the introduction of a new principle nCvef sanctioned by congress. If it be true that the prison limits and jail are the same thing, then our whole state has been converted into a vast prison by mfere act of legislation. The continent might be made a prison in the same way. If, therefore, the jailor had authority to take the bond sued on, from Hanna, with Moore as.his surety, he could not legally have allowed Hanna the prison limits exceeding ten acres.
But at tlie time the jailor took the bond in qugs *653 lion from Hanna and Moore, he had no authority to take a bond with such a condition from any debtor who may have been delivered to him under a ca. sa. issuing from the clerk’s office of a state court. Imprisonment for debt was abolished in this state by an act of 1821, I Dig. 503. Thereafter, jailors had no right, to retain in their custody the person of a debtor committed after the act took effect. It follows conclusively, that if they had no right to keep the body, they had no right to take a bond for thepiison limits; for the privilege of tire bounds is no release or discharge from prison. The person restricted to prison bounds, is still a prisoner in contemplation of law. If, therefore, the- bond in question be tested by the laws of the state alone, it is invalid, because it is contrary to law, and hence the jailor had no right to take it. It may be asked, why did the legislature of Kentucky, in 1822, after the abolition of imprisonment for debt, extend the prison rules to the limits of the state P It is not necessary for us to attempt an answer. It certainly was not necessary to do so with a view to afford ease and comfort to persons confined for debts under the laws of the state, because there could be no such persons. If it was designed to favor the prisoners committed under federal authority, it was an act of legislation interfering with the laws and policy of the United States, over which the states have no rightful control.
Owsley, Monroe and Chinn, for plaintiff; Denny, WicMiffcfy Wooley, and Combs, for defendants.
Viewing the case, in all its aspects, under the néw light shed upon it by the re-argument, we have reached the conclusion that the bond sued on is void.
Wherefore, the mandate of the former opinion,, the Chief Justice dissenting, must remain unchanged.